IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

MAUTAZ EZZAT,

    Plaintiff,

v.   Civil Action No. RDB-22-02918

UGI/AMERIGAS CORP.,

    Defendant.

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## MEMORANDUM ORDER

This case features an alleged breach of oral contract and other claims arising out of an agreement between Plaintiff Mautaz Ezzat ("Ezzat" or "Plaintiff") and Defendant AmeriGas Propane, L.P.,[1] ("Amerigas" or "Defendant"). According to Ezzat, in 1998, Ezzat entered into an oral agreement with Amerigas that provided that Ezzat would secure new customers for Amerigas in exchange for discounted fuel at Ezzat's two personal residences. (Compl. ¶¶ 16, 39, ECF No. 1.) It is alleged that the parties fulfilled their obligations under this agreement for twenty-three years and Ezzat secured Amerigas as many as thirty-five customer accounts, and Amerigas sent Ezzat a pricing agreement indicating the discounted price Ezzat would receive on fuel for that year. (*Id.* ¶ 17.) In November 2021, Amerigas allegedly disclaimed the contract and refused to perform. (*Id.* ¶¶ 18, 24.)

---

[1] AmeriGas Propane, L.P., notes in its Motion to Dismiss that the complaint improperly identified it as UGI/Amerigas Corp. (Mot. to Dismiss 3, ECF No. 3.) The corporate name of the Defendant will be ordered modified in the Separate Order that follows.

1

During this period of non-performance, Ezzat allegedly continued to fulfill his obligations under the oral agreement, and Amerigas continued to benefit from the thirty-five new customer accounts secured as a result of Ezzat's efforts. (*Id.* ¶¶ 37–38, 51.) Based on the existence of this oral contract, Ezzat's Complaint alleges Breach of Contract (Count One), Unjust Enrichment (Count Two), Detrimental Reliance and Promissory Estoppel (Count Three), and Gross Negligence (Count Four). (*Id.* ¶¶ 34–80.) Plaintiff's requested relief includes compensatory damages and fees. (*Id.* ¶ 10.)

Amerigas disputes the existence of an oral agreement and argues that the parties are governed by a series of written Propane Supply and Equipment Leases and Propane Pricing Agreements alone. (Mot. to Dismiss 3–4, ECF No. 3.) Currently pending is Amerigas' Motion to Dismiss all claims. (ECF No. 3.) In support of its motion, Amerigas offers several exhibits: (1) an initial Propane Supply Agreement and Equipment Lease ("Initial PPSA") (Initial PPSA 4, ECF No. 3-2); (2) a revised Propane Supply Agreement and Equipment Lease ("Revised PPSA") (Revised PPSA 3, ECF No 3-3); and (3) two pricing agreements. (Pricing Agreements, ECF Nos. 3-4, 3-5.) The parties' submissions have been reviewed and no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2021). For the reasons that follow, Amerigas' Motion to Dismiss for Failure to State a Claim (ECF No. 3) is **DENIED** in part and **GRANTED** in part; specifically it is **DENIED** as to Count One, and **GRANTED** as to Counts Two, Three, and Four.

## BACKGROUND

In ruling on a motion to dismiss, this Court "accept[s] as true all well-pleaded facts in a complaint and construe[s] them in the light most favorable to the plaintiff." *Wikimedia Found.*

*v. Nat'l Sec. Agency*, 857 F.3d 193, 208 (4th Cir. 2017) (citing *SD3, LLC v. Black & Decker (U.S.) Inc.*, 801 F.3d 412, 422 (4th Cir. 2015)). The following facts are reviewed as alleged in Ezzat's operative Complaint and incorporated documents. *See also Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165–66 (4th Cir. 2016) (holding that courts may "consider documents that are explicitly incorporated into the complaint" and documents submitted by the movant that are "integral to the complaint").

Ezzat, who owns a small business that builds family homes, alleges that he entered into an oral agreement with Amerigas around 1998. (Compl. ¶ 16, ECF No. 1.) The oral agreement provided that Ezzat would obtain new customers and supply contracts for Amerigas. (*Id.*) Ezzat's customers would move into their new home, built by Ezzat's company, and Ezzat would influence them to purchase gas from Amerigas rather than another supplier. (*Id.*) In exchange, Amerigas would provide Ezzat discounted fuel at his two personal residences. (*Id.*) The oral agreement continued each year in perpetuity. (*Id.* ¶ 39.)

However, the oral agreement was not the only thing governing conduct between the parties. On April 11, 1997, Ezzat and Amerigas signed a Propane Supply Agreement and Equipment Lease that provided propane equipment to Ezzat for a term of five years, continuing until terminated by either party. (Initial PPSA 4, ECF No. 3-2.) On February 28, 2000, the parties entered into a revised Propane Supply Agreement and Equipment Lease that also provided propane equipment for five years until terminated by either party. (Revised PPSA 3, ECF No 3-3.) In contrast to the initial lease, the Revised PPSA explicitly provided

that Ezzat would receive a discounted rate for propane.[2] (*Compare id.* at 5 *with* Initial PPSA 4, ECF No. 3-2.)

In addition to the equipment leases, every year, AmeriGas would forward Ezzat a proposed pricing agreement before commencement of the following year, which indicated the discounted price that Ezzat would receive for the upcoming year's fuel replenishments. (Compl. ¶ 17.) The parties abided by these contract terms and performed accordingly for twenty-three years.[3] In November 2021, Amerigas rejected the alleged agreement and informed Ezzat that Amerigas would no longer perform. (*Id.* ¶¶ 18, 24.)

During this period of non-performance by Amerigas, Ezzat contends that he continued to fulfill his obligations under the agreement, and that Amerigas continues to benefit from the thirty-five new customer accounts secured by Amerigas as a result of Ezzat's efforts. (*Id.* ¶¶ 37-38, 51.) Further, in January 2022, Ezzat and his family were scheduled to receive a fuel replenishment. (*Id.* ¶ 27.) However, Amerigas failed to follow through and starting January 31, 2022, Ezzat and his family were "unable to heat their home, bathe, safely store their food and medications, or cook" for two days during a snowstorm which led to "extreme stress, mental anguish, and emotional turmoil." (*Id.* ¶¶ 29–30.) On February 2, 2022, Ezzat received a temporary propane tank, and on February 4, 2022, Ezzat finally received a full fuel replenishment, but he did not receive a discounted rate for that fuel. (*Id.* ¶ 31–32.)

---

[2] The revised PPSA provides that "[p]ropane will be supplied at $.30/gal over Mt. Belvieu, Texas posted price." (Revised PPSA 5, ECF No 3-3.) According to the revised PPSA, the Mt. Belvieu posted price at that time was $.9305 per gallon. *Id.*
[3] During this time, Amerigas underwent a merger in 2019. (Compl. ¶ 22, ECF No. 1.) However, Amerigas continued to fulfill the contract until November 2021.

As a result, Ezzat brings four counts against Amerigas: Breach of Contract, Unjust Enrichment, Promissory Estoppel and Detrimental Reliance, and Gross Negligence. (*See id.* ¶¶ 1-2.) Currently pending is Amerigas' Motion to Dismiss. (ECF No. 3.) This motion is ripe for review.

## STANDARD OF REVIEW

Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P 8(a)(2). Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes the dismissal of a complaint if it fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). The purpose of Rule 12(b)(6) is "to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006) (quoting *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999)) (internal quotation marks omitted).

To survive a motion under Fed. R. Civ. P. 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl., Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Under the plausibility standard, a complaint must contain "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555; *see Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013). A complaint need not include "detailed factual allegations." *Twombly*, 550 U.S. at 555. A complaint must, however, set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if ... [the] actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Id.* at 556 (internal

quotations omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678*; see A Soc'y Without a Name v. Virginia*, 655 F.3d 342, 346 (4th. Cir. 2011).

While ruling on a motion to dismiss, a court's evaluation is generally limited to allegations articulated in the complaint. *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165–66 (4th Cir. 2016). However, courts may also consider documents explicitly incorporated into the complaint by reference. *Id.* at 166 (citing *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007)). Additionally, a court may "consider a document submitted by the movant that was not attached to or expressly incorporated in a complaint, so long as the document was integral to the complaint and there is no dispute about the document's authenticity." *Id.* (citing *Sec'y of State for Defence v. Trimble Nav. Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007)). A document is "integral" when "its 'very existence, and not the mere information it contains, gives rise to the legal rights asserted.'" *Chesapeake Bay Found., Inc. v. Severstal Sparrows Point, LLC*, 794 F. Supp. 2d 602, 611 (D. Md. 2011) (citing *Walker v. S.W.I.F.T. SCRL*, 517 F. Supp. 2d 801, 806 (E.D.Va. 2007)) (emphasis omitted). Considering such documents does not convert a motion to dismiss to one for summary judgment. *Goldfarb v. Mayor of Baltimore*, 791 F.3d 500, 508 (4th Cir. 2015). Accordingly, this Court shall consider the text of both the initial and revised Propane Supply Agreement and Equipment Lease, and the yearly pricing agreements, which were referenced in the complaint and are "integral" to Amerigas' Motion to Dismiss. (*See, e.g.*, Compl. ¶¶ 16–18.)

## ANALYSIS

### I.   Breach of Contract (Count One)

In Count One of the operative Complaint, Ezzat asserts Amerigas breached its contract, initially formed through oral agreement, with Ezzat. (Compl. ¶ 16.) Amerigas argues an oral agreement never existed. (Mot. to Dismiss 3–4, ECF No. 3.)

As the basis of this Court's jurisdiction lies in diversity of citizenship under 28 U.S.C. § 1332(a), Maryland law applies. *Hartford Fire Ins. Co. v. Harleysville Mut. Ins. Co.*, 736 F.3d 255, 261 n.3 (4th Cir. 2013) (citing *Gasperini v. Ctr. For Humanties, Inc.*, 518 U.S. 415, 427 (1996)). The elements of a claim for breach of contract are "contractual obligation, breach, and damages." *Parkway 1046, LLC v. U.S. Home Corp.*, 961 F.3d 301, 307 (4th Cir. 2020) (quoting *Kumar v. Dhanda*, 17 A.3d 744, 749 (Md. Ct. Spec. App. 2011)). Under Maryland law, a contract is formed through offer, acceptance, and consideration. *See, e.g.*, *Maryland Supreme Corp. v. Blake Co.*, 369 A.2d 1017, 1024 (Md. 1977). Such a contract need not be written or explicitly created. Under Maryland law, oral contracts are permissible and can be express or implied. An express contract "arises from *verbal* communication of *definite terms*" while an implied contract "arises from *actions* implying *definite terms*." *Dolan v. McQuaide*, 79 A.3d 394, 402 (Md. Ct. Spec. App. 2013) (emphasis in original). Further, an implied contract "can be seen in [the parties'] conduct rather than in an explicit set of words." *Mogavero v. Silverstein*, 790 A.2d 43, 52 (Md. Ct. Spec. App. 2002) (citing *Mass Transit Admin. v. Granite Constr. Co.*, 471 A.2d 1121, 1125 (Md. Ct. Spec. App. 1984)); *see generally Slick v. Reinecker*, 839 A.2d 784 (Md. Ct. Spec. App. 2003) (collecting cases defining implied contract under Maryland law).

Ezzat has plausibly alleged a cause of action for Breach of Contract at the pleadings stage. Regarding the existence of the oral agreement, Ezzat has plead that in 1998, he entered into an oral agreement with Amerigas. (Compl. ¶ 16, ECF No. 1.) Ezzat has sufficiently pled

the terms of the agreement, which were that Ezzat would help Amerigas obtain supply contracts, and in exchange Amerigas would provide discounted fuel to Ezzat's homes, existing in perpetuity. (*Id.*) Supporting this contention, Ezzat explains that every year, Amerigas sent Ezzat a pricing plan reflecting the discounted price that Ezzat would receive for the following year, and Amerigas granted Ezzat the discounted price, indicating that the parties abided with the contract through their performance. (*Id.* ¶ 17.) Ezzat has adequately alleged the possibility that a contract, either express, through oral agreement, or implied, through the parties' conduct, existed between Ezzat and Amerigas. Therefore, in plausibly alleging a contractual relationship between Ezzat and Amerigas, the Complaint has adequately alleged a contractual obligation on which to base a Breach of Contract claim.

As to breach, Ezzat alleges that Amerigas materially breached the contract in 2019 when Defendant ceased provision of discounted gas and repudiated the contract. (*Id.* ¶¶ 16, 40–41.) For damages, Ezzat's requested relief is compensatory damages, and Ezzat alleges this would compensate him for economic loss. (*Id.* ¶¶ 10, 11, 43.) These allegations are sufficiently detailed to surmount the *Iqbal* bar, and are more than "[t]hreadbare recitals . . . supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678. Construing the facts in Ezzat's favor as the non-movant, Ezzat has sufficiently plead his Breach of Contract claim. *See Parkway 1046*, 961 F.3d at 307.

Moreover, Amerigas' arguments in its Motion to Dismiss for the Breach of Contract claim fail. Amerigas argues that since no oral contract existed, the yearly-issued pricing agreements govern the transaction. (Mot. to Dismiss 6–8, ECF No. 3.) Further, Amerigas

contends that because no service contract was in place for January 2022,[4] AmeriGas cannot be liable for breach for failing to replenish Ezzat's fuel when no valid contract existed for that time period. (*Id.*) However, at this early stage in the litigation, Amerigas' argument relies on inferences that cannot be drawn in in its favor, primarily as to the existence of the oral contract. Accordingly, Amerigas' Motion to Dismiss is **DENIED** as to Count One, the Breach of Contract Claim.

## II.   Unjust Enrichment (Count Two)

In Count Two of the operative Complaint, Ezzat asserts a claim for unjust enrichment. Unjust Enrichment "deprives the defendant of benefits that would be inequitable for the defendant to retain." *State Farm Mut. Auto. Ins. Co. v. Slade Healthcare, Inc.*, 381 F. Supp. 3d 536, 560 (D. Md. 2019) (citation omitted). Under Maryland law, a claim for unjust enrichment requires three elements:

1. A benefit conferred upon the defendant by the plaintiff;
2. An appreciation or knowledge by the defendant of the benefit; and
3. The acceptance or retention by the defendant of the benefit under such circumstances as to make it inequitable for the defendant to retain the benefit without the payment of its value.

*Hill v. Cross Country Settlements, LLC*, 936 A.2d 343, 351 (Md. 2007) (quoting *Berry & Gould, P.A. v. Berry*, 757 A.2d 108, 113 (Md. 2000)). "[A] successful unjust enrichment claim serves to 'deprive the defendant of benefits that in equity and good conscience he ought not to keep, even though he may have received those benefits quite honestly in the first instance, and even though the plaintiff may have suffered no demonstrable losses." *Id.* at 352 (quoting *Dep't of*

---

[4] January 2022 is the period during which the storm occurred and Ezzat failed to receive a fuel replenishment. (Compl. ¶¶ 28–29.)

*Hous. & Cmty. Dev. v. Mullen*, 886 A.2d 900, 921 (Md. Ct. Spec. App. 2005), *cert denied.*, 894 A.2d 546 (Md. 2006)).

Ezzat has not plausibly alleged unjust enrichment on these facts. Ezzat argues that he secured thirty-five customer accounts for Amerigas' services (to the tune of $875,000 according to Ezzat's calculations); that Amerigas continues to retain this monetary benefit; and that Amerigas should have to pay Ezzat the value of this benefit. (Compl. ¶ 51, ECF No. 1.) However, Ezzat in no way alleges why or how it would be "inequitable for the defendant to retain the benefit without the payment of its value." Therefore, Ezzat's claim for unjust enrichment fails because his complaint does <u>not</u> contain facts demonstrating unjust enrichment that are "more than labels and conclusions." *Twombly*, 550 U.S. at 555. More specifically, Ezzat has not properly alleged why it is inequitable for Amerigas to retain the benefit's value without repayment. Because Ezzat has inadequately plead facts to constitute a cause of action for Unjust Enrichment, this Court **GRANTS** Amerigas' Motion to Dismiss with respect to Count Two, the Unjust Enrichment claim. Therefore, Count Two of the Complaint is dismissed *without prejudice*, and plaintiff is free to seek leave to amend his complaint from this Court in order to enhance his factual allegations on this claim.

### III. Detrimental Reliance & Promissory Estoppel (Count Three)

In Count Three of the operative Complaint, Ezzat asserts that he detrimentally relied on the promise for discounted fuel, acting in reliance on this promise by continuing to secure new customer accounts for Amerigas. (Compl. ¶¶ 59–61.)

To state a claim for promissory estoppel or detrimental reliance under Maryland law, a plaintiff must allege: (1) the existence of "a clear and definite promise"; (2) where the promisor

has a reasonable expectation that the offer will induce action or forbearance on the part of the promisee"; (3) "which does induce actual and reasonable action or forbearance by the promise"; and (4) "causes a detriment which can only be avoided by enforcement of the promise." *Pavel Enters., Inc. v. A.S. Johnson Co.*, 674 A.2d 521, 532 (Md. 1996). Further, promissory estoppel is a *quasi-contractual* claim, meaning "it is an equitable remedy that permits recovery 'where, in fact, *there is no contract*, but where circumstances are such that justice warrants a recovery as though there had been a promise.'" *Odyssey Travel Ctr., Inc. v. RO Cruises, Inc.*, 262 F. Supp. 2d 618, 626 (D. Md. 2003) (emphasis added) (quoting *Swedish Civil Aviation Admin v. Project Mgmt. Enters., Inc.*, 190 F. Supp. 2d 785, 792 (D. Md. 2002) (internal quotations and citations omitted)). Moreover, "'no quasi-contractual claim can arise when a contract exists . . . concerning the same subject matter on which the quasi-contractual claim rests.'" *Id.*

Ezzat's equitable claims based on Promissory Estoppel and Detrimental Reliance fail. Ezzat fails to plausibly allege that Amerigas has caused a detriment that can only be avoided by enforcement of the promise. Ezzat has not suffered any detriment because he received discounted fuel as promised for twenty-three years. (Compl. ¶ 18.) Further, Ezzat has failed to show that he is personally harmed in any way by Amerigas' retainment of customers. Therefore, Ezzat cannot show detrimental reliance.

Even if Ezzat *had* properly alleged this equitable claim, given this Court's denial of the Defendant's Motion to Dismiss as to Ezzat's breach of contract claim in Count One, Ezzat need not seek promissory estoppel as an alternative remedy in this case. Ezzat is seeking recovery under Count Three *in addition to* its claims in Count One. This is the sort of claim Maryland law flatly prohibits because a contract allegedly exists concerning the same subject

11

matter on which the quasi-contractual claim rests. *See Odyssey Travel*, 262 F. Supp. 2d at 262. Therefore, this Court **GRANTS** Amerigas' Motion to Dismiss with respect to Count Three, the Detrimental Reliance and Promissory Estoppel claim, and Count Three of the operative Complaint is dismissed *with prejudice*.

### IV.   Gross Negligence (Count Four)

In Count Four of the operative Complaint, Ezzat asserts that Amerigas acted with gross negligence in failing to replenish Plaintiffs' fuel tanks at his personal residences during a severe winter storm. (Compl. ¶ 71.) Notably, Ezzat does not make out a prima facie case negligence as he has not alleged duty nor causation. (Compl. ¶ 68–80.)

To establish negligence under Maryland law, a plaintiff must prove the following four elements: "(1) that the defendant was under a duty to protect the plaintiff from injury, (2) that the defendant breached that duty, (3) that the plaintiff suffered actual injury or loss, and (4) that the loss or injury proximately resulted from the defendant's breach of the duty." *Lloyd v. Gen. Motors Corp.*, 916 A.2d 257, 270–71 (Md. 2007) (citations omitted). Under Maryland law, gross negligence is viewed "as something *more* than simple negligence, and likely more akin to reckless conduct." *Barbre v. Pope*, 935 A.2d 699, 717 (Md. 2007) (citing *Taylor v. Harford Cty. Dep't of Soc. Servs.*, 862 A.2d 1026, 1035 (Md. 2004)); *see also Devi v. Prince George's Cty.*, Civil Action No. DKC 16-3790, 2018 WL 2364325, at *5 (D. Md. May 24, 2018). Indeed,

> [g]ross negligence is "an intentional failure to perform a manifest duty in reckless disregard of the consequences as affecting the life or property of another, and also implies a thoughtless disregard of the consequences without exertion of any effort to avoid them. Stated conversely, a wrongdoer is guilty of gross negligence or acts wantonly and willfully only when he inflicts injury intentionally or is so utterly indifferent to the rights of others that he acts as if such rights did not exist."

*Taylor*, 862 A.2d at 1035 (quoting *Romanesk v. Rose*, 237 A.2d 12, 14 (Md. 1968)).

Further, under Maryland law, "a contractual obligation in and of itself generally does not create a tort duty" without an "independent duty." *Lawyers Title Ins. Corp. v. Rex. Title Corp.*, 282 F.3d 292, 293 (4th Cir. 2002). Moreover, the general rule in Maryland is that state law "does not recognize a cause of action for negligence arising solely from a contractual relationship between two parties." *Id.* at 293–94 (citing *Heckrotte v. Riddle*, 168 A.2d 879, 882 (Md. 1961)).

Here, Ezzat's claim of gross negligence fails for multiple reasons. First, he has not sufficiently plead negligence. Regarding duty, plaintiff alleges "[d]efendant's intentional failure to perform a manifest duty in reckless disregard of the consequences affected the life and property of Plaintiff." (Compl. ¶ 69, ECF No. 1.) However, Ezzat entirely fails to state what exactly was the duty owed by Amerigas to Ezzat. Even if Ezzat had properly plead duty, he entirely fails to establish any sort of proximate cause. Hence Ezzat fails to state a claim for negligence.

Second, even if Ezzat *had* properly alleged negligence, any legal duty that Amerigas had to replenish Ezzat's gas arises out of a contractual duty alone. Quite simply, Maryland law prohibits a cause of action in tortious negligence based solely on a contractual duty. *See Lawyers Title Ins. Corp.*, 282 F.3d at 293–94. Thus, Ezzat's claim of gross negligence fails. Therefore, this Court **GRANTS** Amerigas' Motion to Dismiss with respect to Count Four, the gross negligence claim, and Count Four of the operative Complaint is dismissed *with prejudice*.

## CONCLUSION

For the foregoing reasons, it is this 10th day of April, 2023, hereby **ORDERED** that Defendant UGI/Amerigas Corp.'s Motion to Dismiss for Failure to State a Claim (ECF No. 3) is **GRANTED** in part and **DENIED** in part. Specifically:

1. Defendant's Motion to Dismiss is **DENIED** as to Count One;

2. Defendant's Motion to Dismiss is **GRANTED** as to Count Two, and Count Two of the Complaint is dismissed *without prejudice*;

3. Defendant's Motion to Dismiss is **GRANTED** as to Counts Three and Four, and Counts Three and Four of the Complaint are dismissed *with prejudice*; and

4. The Clerk of the Court shall correct the name of the Defendant to **AmeriGas Propane, L.P.**, and the case shall be accordingly recaptioned.

Dated: April 10, 2023

_____/s/_____
Richard D. Bennett
United States District Judge